IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RITA RESTAURANT CORP., *et al*[1] | § | Case No. 16-52272-rbk |
| | § | |
| Debtors. | § | (Joint Administration Pending) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER
(I) AUTHORIZING DEBTORS TO (A) PAY PRE-PETITION WAGES
AND OTHER COMPENSATION, AND EMPLOYEE BENEFITS, AND (B)
CONTINUE EXISTING EMPLOYEE BENEFIT PLANS AND
PROGRAMS, (II) APPROVING THE DEBTORS' DISCRETIONARY
EMPLOYEE INCENTIVE PROGRAMS, AND
(III) GRANTING RELATED RELIEF**

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases") (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors, in their sole discretion, to (a) pay pre-petition and post-petition wages and other compensation, employee business expense allowances and reimbursements, employee benefits, and (b) continue existing employee benefit plans and programs, (ii) approving the Debtors' discretionary employee incentive programs, and (iii) granting such other and further relief as requested herein or as the Court (defined herein) otherwise deems necessary or appropriate. In support of this Motion, the Debtors submit the *Declaration of Peter Donbavand in Support of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Rita Restaurant Corp. (3919); Don Pablo's Operating, LLC (1986); and Hops Operating, LLC (1985). The address for all the Debtors is 120 Chula Vista, Hollywood Park, TX 78232.

{39667546;1}　　　　　　　　　　　　　　　　1

*Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated herein by reference. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the Western District of Texas (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 363, and 507 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 6003 and 6004 and Local Rule 2015-2.

## BACKGROUND

4. On October 4, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court"), thereby commencing these Chapter 11 Cases. The Debtors' motion for joint administration of the Cases is pending. The Debtors continue in possession of their property and they are operating and managing their business as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

5. The Debtors operate full service, casual dining restaurants, consisting of sixteen (16) Don Pablo's Mexican Kitchen restaurants ("Don Pablo's") and one (1) Hops Grill and Brewery restaurant ("Hops"). The Debtors' restaurants are located in ten (10) states in the United States.

6. Don Pablo's is a chain of Tex-Mex restaurants founded in Lubbock, Texas in 1985. The menu features Tex-Mex items, salsa, tortillas and sauces and a range of other Mexican specialties. At one time, this chain had as many as 120 locations throughout the United States making it the second largest full service Mexican restaurant chain within the United States during the late 1990s.

7. Hops is a casual dining restaurant that offers fresh, made from scratch menu items in a relaxed atmosphere featuring signature dishes that are created from high-quality, fresh ingredients, prepared in a display style kitchen that allows the customer to view the cooking process.

8. In addition to the three (3) Debtors, the Debtors have nine non-debtor affiliates, comprised of: (i) four (4) special purpose entities that were created solely to hold certain liquor licenses utilized by the Debtors in their operations; (ii) four (4) "shell" entities with no assets or liabilities and which do not conduct any operations; and (iii) one entity which solely distributes gift cards.

9. The Debtors' business operations are, and have been since 2014 when Alamorita Restaurant Company, LLC acquired the stock of the Debtors, managed by FMP SA Management Group, LLC ("FMP") pursuant to a management agreement. FMP, a privately held company based in Hollywood Park, Texas, is a multi-concept developer and operator of independent restaurant chains. FMP provides operational oversight and all professional and administrative services for the Debtors. In return for the services provided, FMP receives reimbursement of allocated costs and expenses and a management fee. A separate entity, FMP – Rita Payroll, LLC ("FMP Payroll"), provides employment and wage related services for the Debtors.

10. The Debtors own no real property at this time. The Debtors lease the properties where restaurants are located.

11. As of the Petition Date, the Debtor estimates that they have approximately $1,000,000 – $1,500,000 of unsecured trade debt and other outstanding operating expenses, including, but not limited to rent, accrued management fees and general operating payables. In terms of numbers, only a handful of vendors have not been kept current and were not current at the time of filing.

12. A series of factors have contributed to the Debtors' operational challenges and ultimately resulted in the need to file these chapter 11 cases. In sum, the Debtors' have been unable to reverse the decade long decline brought on by prior management and ownership.

13. Perhaps more than any other factor, the Debtors' efforts to improve financial performance have been adversely impacted by the overall weakness in the casual dining environment. The casual dining industry is highly competitive and faces increased competition from fast-casual dining options. Despite the relatively steady economy in most of the United States, the casual dining environment remains depressed.

14. In addition, Mexican casual dining has been under continued pressure with the fast growth of "Fast Casual" Mexican brands, such as Moe's Southwest Grill, Panchero's Mexican Grill, Baja Fresh, Qdoba Mexican Grill, Tijuana Flats, and Chipotle Mexican Grill, and the competitive intrusion of Mexican product offerings to the varied-menu bar and grill segment such as Chili's, Applebee's and TGI Fridays, thereby making the "Mexican" meal available in new and substantially more locations.

15. The Debtors also struggle with rental rates that are currently, or will be in the near future, at amounts that the revenues from the specific leased location cannot sustain, especially in

combination with increased costs of goods, services and employees.

16. In response to these developments, the Debtors have reduced spending and implemented a series of cost-cutting measures to include, among other things, closing of certain locations, streamlining costs for good and services, and renegotiating leases with landlords.

17. Despite the best efforts of the Debtors and their management, market conditions have caused the Debtors' revenues to decrease and resulted in the need for filing for bankruptcy.

18. Additional details regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases are set forth in the First Day Declaration filed contemporaneously herewith and incorporated herein by reference as though set forth in full.

## WAGE AND BENEFIT OBLIGATIONS

### A. Wages and Salaries

19. As set forth in the First Day Declaration, the Debtors anticipate continuing operations at seventeen (17) restaurant locations operating in ten (10) states. The Debtors' success in their restructuring efforts will be highly dependent on the continued support and performance of its workforce.

20. Debtors Rita Restaurant Corp., Don Pablo's Operating, LLC and Hops Operating, LLC do not have any employees. FMP - Rita Payroll, LLC employs the employees who perform a broad spectrum of services for the Debtors (the "Employees").

21. In the period prior to the Petition Date, there were approximately 745 salaried and hourly employees working at the Debtors' restaurants.

22. In connection with the salaries and wages paid to Employees, FMP – Rita Payroll, LLC also handles as required by law withholding from their Employees' wages amounts related to federal, state, and local income taxes, as well as social security and Medicare Taxes

(collectively, the "Employee Withholding Taxes") and remit same to the applicable taxing authorities. FMP - Rita Payroll, LLC also handles deduction of certain amounts from Employees' paychecks, including, without limitation, garnishments, child support and service charges, and similar deductions.

23. Debtors prior to each pay day, advance FMP - Rita Payroll, LLC the funds necessary to pay the Employees.

24. The Debtors have structured the employment of the restaurant employees this way to efficiently reduce overhead expenditures and take advantage of the cost savings associated with consolidating back office functions.

25. The Debtors have two different payroll periods. Employees working at Don Pablo's restaurants are paid twelve days in arrears and as of the Petition Date are paid thru September 21, 2016. The next payday is Friday, October 14, 2016. The average payroll is $427,000.

26. Employees working at the Hops' restaurant are paid twenty-six (26) days in arrears and as of the Petition Date are paid thru September 7, 2016. The next two week payday for these employees is Friday, October 7, 2016. On October 21, 2016, the remainder of the pre-petition wages will be paid. The average payroll is $31,500.

27. A vast majority of the Employees rely exclusively on the payments and other benefits they receive from the Debtors for their basic living necessities. If the Debtors do not pay the obligations for compensation, benefits and reimbursable expenses, the Employees will face significant financial difficulties. Moreover, Employee morale and loyalty will be jeopardized at a time when the support of the Employees is critical to the Debtors' success. In the absence of honoring the Debtors' pre-petition obligations to the Employees, the Employees may seek

alternative employment opportunities. Accordingly, it is essential to pay and honor obligations to Employees.

28. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued Employee Wages (excluding Payroll Taxes and Deductions, defined below,) earned prior to the Petition Date that remain unpaid totals approximately $306,000 (the "Unpaid Wages").

29. By this Motion, the Debtors request authority to pay all Unpaid Wages to the Employees in the ordinary course of business. The Debtors have made careful inquiries and have taken diligent steps to ensure that none of the Employees are owed more than $12,850 for Unpaid Wages as of the Petition Date. Accordingly, the Debtors believe that no individual Employee will be paid more than the statutory priority cap if this Court grants the requested relief.

B.    **Employee Business Expenses**

30. In the ordinary course of the Debtors' business and as is customary with most large businesses, the Debtors reimburse FMP SA Management Group, LLC for certain expenses the Employees incur in the scope of their employment (the "Reimbursable Expenses"). Most employees initially incur and pay such expenses by using corporate credit cards. The Reimbursable Expenses are largely composed of ordinary and necessary expenses including cell phone, internet, hotel and airfare charges, meals, equipment, marketing inserts, airfare, tolls, parking, mileage, employee incentives, and postage.

31. As of the Petition Date, the Debtors estimate that approximately $10,000 of Reimbursable Expenses are charged on a monthly basis to the corporate credit cards.

32. It would be patently inequitable to require Employees to personally bear any approved business-related expenses they incurred in furtherance of their responsibilities as Employees.

33. Accordingly, the Debtors request authority, in their discretion and in the exercise of their business judgment, to continue to honor all of the Employees Reimbursable Expenses in the ordinary course of business, regardless of when such obligations arose and to continue to use the corporate credit cards.

    C.    **Health Care Programs**

34. The Debtors thru FMP Restaurant Payroll, LLC, maintain a self-funded health insurance program for certain of the employees (the "Health Insurance Program"). Through the Insurance Program certain of the Debtors' employees receive health insurance through Humana Insurance.

35. Both the Debtors and the employees contribute to the premium payment requirements for these plans, however, Debtors pay approximately $14,000 a month for their portions of the medical premium.

36. By this Motion, the Debtors seek authority to: (a) continue to provide the Health Insurance Program for the Employees in the ordinary course of business; (b) continue to honor obligations under such benefit programs, including any premiums and administrative fees; and (c) pay any amounts owed under the Health Insurance Program to the extent that they remain unpaid as of the Petition Date.

    D.    **Employee Incentive and Bonus Programs**

37. The Debtors have various other practices, programs and policies that provide important benefits for the Employees. These programs include, but are not limited to discretionary incentive plans designed to provide additional compensation and other benefits to Employees to encourage exceptional Employee performance for the benefit of the Debtors' business (collectively, the "Discretionary Employee Incentive Programs"). Specifically, the

Debtors offer Bonus Programs to its Restaurant Managers, Regional Managers and Director of Operations.

38. The Rita's Discretionary Employee Incentive Program provides Restaurant Managers, Regional Mangers and Director of Operations for each restaurant location with a percentage bonus based on total controllable income with goals set by sales volume. The potential bonus percentage payout is distributed to operational leadership in three benchmarks: 50% payout, 75% payout and 100% payout. During a period a 100% payout to a General Manager is $1,200 and for an Assistant Manager it is $600.

39. Subject to the requirements of section 503 of the Bankruptcy Code, the Debtors request authority to continue to honor each of the Discretionary Employee Incentive Programs after the Petition Date, as such programs may be modified, amended or supplemented from time to time in the ordinary course of the Debtors' operations, including payment of any pre-petition amounts outstanding on account of the Discretionary Employee Incentive Programs, solely upon entry of a final order granting this Motion.

## RELIEF REQUESTED

40. By this Motion, the Debtors request entry of an Order (a) authorizing the Debtors to pay, in its sole discretion, all payments required under or related to Employee Wages, Unpaid Wages, Reimbursable Expenses, Payroll Taxes, and Deductions (including reimbursement to credit card companies for any Reimbursable Expenses charged to credit cards)(each as defined above and collectively, the "Employee Compensation"); (b) authorizing the Debtors to continue to satisfy or honor, in its sole discretion, the Health Insurance Program (collectively, the "Employee Benefits" and, together with the Employee Compensation, the "Employee

Obligations")[2] and all costs incident to the foregoing, and to continue to honor its practices, programs and policies for its Employees, as those practices, programs and policies were in effect as of the Petition Date and as such practices, programs and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtors' business; and (c) approving the Discretionary Employee Incentive Programs.

## BASIS FOR RELIEF

41. To maintain the Debtors' operations and preserve the value of their estates, it is essential that the Debtors continue to operate, to the extent possible, in the ordinary course of business. To achieve that result, the Debtors must retain the uninterrupted service and loyalty of its lifeline, which is the Employees. Payment of the Employee Compensation and continuation or satisfaction of the Employee Obligations and related arrangements is essential to this goal. Accordingly, the Debtors submit that the relief requested herein is critical to their ability to operate effectively and to preserve the value of the estates throughout this Chapter 11 Cases and, therefore, is in the best interests of the Debtors and their estates. Moreover, this relief is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

**A. The Court Should Authorize the Debtors to Honor Its Employee Obligations**

**1. Certain of the Employee Obligations are Entitled to Priority Treatment**

42. Pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code, certain of the unpaid Employee Obligations are entitled to priority treatment in an amount up to $12,850 for each individual Employee (the "Statutory Cap"). *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (i) wages, salaries, or commissions, including

---

[2] The Debtors believe that the Employee Obligations described herein constitute a comprehensive list of such obligations. To the extent any plan, program or other obligation was inadvertently omitted, however, the term "Employee Obligations" includes such plan, program or other obligation.

vacation, severance and sick leave pay earned by an individual, and (ii) contributions to an employee benefit plan); 11 U.S.C. § 507(a)(4) (providing that allowed unsecured claims for "(A) wages, salaries, or commissions, including vacation severance, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor . . ." up to $12,850 per individual are entitled to a fourth priority ahead of general unsecured claims); 11 U.S.C.§ 507(a)(5) (providing that "allowed unsecured claims for contributions to an employee benefit plan . . .," with offsets for payments made under section 507(a)(4), are entitled to a fifth priority).

43. The Debtors are not seeking to satisfy the Employee Obligations in amounts that exceed the Statutory Cap in the aggregate per Employee, as calculated under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Accordingly, granting the relief sought with respect to compensation affects only the timing of payments to Employees. Indeed, the Debtors submit that payment of Employee Obligations up to the Statutory Cap per individual will enhance value for the benefit of the Debtors' estates because it will help ensure that the Employees--the lifeblood of the Debtors' business operations--will continue to provide vital services to the Debtors at this critical juncture. In addition, to the extent that the Debtors are authorized, in a reasonable exercise of their business judgment, to honor or satisfy the Employee Obligations on a postpetition basis in the ordinary course of business, such payments will enhance the value of the Debtors' estate by preserving the going-concern value of the Debtors' business.

  **2.** **Payment of Certain of the Employee Obligations is Required by Law**

44. The Debtors also seek authority to pay Payroll Taxes and other Deductions to the appropriate entities, including but not limited to FMP Restaurant Payroll, LLC. These amounts principally represent Employee earnings that Employees, governments and judicial authorities have designated for withholding from Employees' paychecks. Indeed, certain withholdings,

including child support and alimony payments, are not property of the Debtors' estate because the Debtors thru FMP Restaurant Payroll, LLC have withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(7) and (d) (amounts withheld from employee paychecks by employer for contribution to employee benefit plan are not property of the estate). In addition to causing undue hardship to certain Employees, the failure to pay such Payroll Taxes and Deductions may result in the Debtors being inundated with inquiries from taxing authorities and garnishors regarding its failure to submit, among other things, taxes and child support and alimony payments, which are not the Debtors' property but have been withheld from Employee paychecks. Moreover, if the Debtors cannot remit these amounts, the affected Employees may face legal action and/or imprisonment due to the Debtors' failure to submit these payments.

45.     Further, applicable federal and state laws require the Debtors to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95-96 (3rd. Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co. v. State of Michigan (In re DuCharmes & Co.),* 852 F.2d 194, 195-96 (6th Cir. 1988) (per curiam) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Moreover, because the Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize the Debtors to transmit the Payroll Taxes to the proper parties in the ordinary course of business.

B. **Satisfaction of the Employee Obligations is Warranted Under the Doctrine of Necessity**

46. Courts generally acknowledge that, under appropriate circumstances, a court may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a pre- petition claim 'is essential to the continued operation of [the debtor], payment may be authorized."); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding sound business justification for payment of certain pre-petition claims); *In re Tropical Sportswear Int'l Corp.,* 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) (holding that "[Bankruptcy Code] section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."). When authorizing such payments, courts have relied upon several legal theories rooted in Bankruptcy Code sections 1107(a), 1108, 363(b), and 105(a).

47. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.§ 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business. *See In re UNR Indus., Inc.,* B.R. 506, 520 (Bankr. N.D. Ill. 1992), *rev'd on other grounds, sub nom. Rohn, Inc. v. Bloomington Factory Workers (In re UNR Indus., Inc.),* 173 B.R. 149 (N.D. Ill. 1994) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *In re Ionosphere Clubs, Inc.,*

98 B.R. at 177 (finding that section 105 of the Bankruptcy Code empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor).

48. The Debtors submit that the relief requested herein will benefit the Debtors' estates and creditors by allowing the Debtors' business operations to continue without interruption while the Debtors seek to consummate their proposed restructuring. Absent such payments, the Employees may seek alternative employment opportunities. Such a development will deplete the Debtors' workforce, hinder or preclude the Debtors' ability to meet its customer obligations at a time when the Debtors seek to conduct operations in a "business as usual" manner.

## RESERVATION OF RIGHTS

49. To the extent that any contract or agreement in connection with any of the Employee Obligations or the Discretionary Employee Incentive Programs is based upon or deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time intend to assume or reject such contract or agreement. As such, the Court's authorization of payment shall not be deemed to constitute an assumption of such contract or agreement pursuant to section 365 of the Bankruptcy Code. The Debtors are currently in the process of reviewing all of its contracts and agreements and reserve all of its rights with respect thereto. Nothing herein shall acknowledge, grant, or otherwise permit any right of offset or recoupment by a non-debtor with respect to any claim asserted against the Debtors. If the Court grants the relief sought herein, any payments made pursuant to the Court's order are not intended and should not be construed as an admission to the validity of any claim or a waiver of the rights of the Debtors to dispute such claim subsequently.

50. Additionally, except as expressly stated herein, nothing contained herein is intended or should be construed as (a) an agreement or admission by the Debtors as to the validity of any claim against its estate, (b) a waiver or impairment of the Debtors' right to dispute any claim on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to an Order granting the relief requested in this Motion.

### **DEBTORS SATISFY BANKRUPTCY RULE 6003**

51. Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . .." Fed. R. Bankr. P. 6003(b). The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

### **WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)**

52. To implement the foregoing successfully, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004 (h), to the extent it applies.

## **NOTICE**

53. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee; (b) the holders of the 30 largest consolidated unsecured claims against the Debtors; (c) the United States Attorney's Office for the Western District of Texas; (d) the Internal Revenue Service; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth above and in the First Day Declaration, the Debtors respectfully request that the Court enter the Order substantially in the form attached hereto as **Exhibit A** (i) authorizing the Debtors, in their sole discretion, to (a) pay pre-petition and post-petition wages and other compensation, employee business expense allowances and reimbursements, and employee benefits, and (b) continue existing employee benefit plans and programs, (ii) approval of the Discretionary Employee Incentive Programs, and (iii) granting such other and further relief.

Dated: October 4, 2016

AKERMAN LLP

　/s/ David. W. Parham　　　　　　　　
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX  75201
Telephone:   (214) 720-4300
Facsimile:   (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION