IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RITA RESTAURANT CORP., *et al*[1] | § | Case No. 16-52272-RBK |
| | § | |
| Debtors. | § | (Joint Administration Pending) |

**EMERGENCY MOTION FOR INTERIM AND FINAL
AUTHORITY FOR THE DEBTORS TO USE CASH COLLATERAL
AND DETERMINING ADEQUATE PROTECTION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Rita Restaurant Corp., *et al.* (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Cases"), by and through undersigned counsel, hereby file this motion (the "Motion") seeking entry of an order in substantially the form attached hereto as **Exhibit A** (the "Interim Order"), (i) granting interim authority and setting a hearing for final authority to use cash collateral and (ii) determining adequate protection, and show as follows:

**I. PRELIMINARY STATEMENT**

1. On October 4, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "Petition") under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

2. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Rita Restaurant Corp. (3919); Don Pablo's Operating, LLC (1986); and Hops Operating, LLC (1985). The address for all the Debtors is 120 Chula Vista, Hollywood Park, TX 78232.

{39679833;2}

Cases.

3. The Debtors operate full service, casual dining restaurants, consisting of sixteen (16) Don Pablo's Mexican Kitchen restaurants ("Don Pablo's") and one (1) Hops Grill and Brewery restaurant ("Hops"). The Debtors' restaurants are located in ten (10) states in the United States.

4. Don Pablo's is a chain of Tex-Mex restaurants founded in Lubbock, Texas in 1985. The menu features Tex-Mex items, salsa, tortillas and sauces and a range of other Mexican specialties. At one time, this chain had as many as 120 locations throughout the United States making it the second largest full service Mexican restaurant chain within the United States during the late 1990s.

5. Hops is a casual dining restaurant that offers fresh, made from scratch menu items in a relaxed atmosphere featuring signature dishes that are created from high-quality, fresh ingredients, prepared in a display style kitchen that allows the customer to view the cooking process.

6. In addition to the three (3) Debtors, the Debtors have nine non-debtor affiliates, comprised of: (i) four (4) special purpose entities that were created solely to hold certain liquor licenses utilized by the Debtors in their operations; (ii) four (4) "shell" entities with no assets or liabilities and which do not conduct any operations; and (iii) one entity which solely distributes gift cards.

7. The Debtors' business operations are, and have been since 2014 when Alamorita Restaurant Company, LLC acquired the stock of the Debtors, managed by FMP SA Management Group, LLC ("FMP") pursuant to a management agreement. FMP, a privately held company based in Hollywood Park, Texas, is a multi-concept developer and operator of independent

{39679833;2}

restaurant chains. FMP provides operational oversight and all professional and administrative services for the Debtors. In return for the services provided, FMP receives reimbursement of allocated costs and expenses and a management fee. A separate entity, FMP – Rita Payroll, LLC ("FMP Payroll"), provides employment and wage related services for the Debtors.

8. The Debtors own no real property at this time. The Debtors lease the properties where restaurants are located.

9. As of the Petition Date, the Debtors estimate that they have approximately $1,000,000 – $1,500,000 of unsecured trade debt and other outstanding operating expenses, including, but not limited to rent, accrued management fees and general operating payables. In terms of numbers, only a handful of vendors have not been kept current and were not current at the time of filing.

10. A series of factors have contributed to the Debtors' operational challenges and ultimately resulted in the need to file these chapter 11 cases. In sum, the Debtors' have been unable to reverse the decade long decline brought on by prior management and ownership.

11. Perhaps more than any other factor, the Debtors' efforts to improve financial performance have been adversely impacted by the overall weakness in the casual dining environment. The casual dining industry is highly competitive and faces increased competition from fast-casual dining options. Despite the relatively steady economy in most of the United States, the casual dining environment remains depressed.

12. In addition, Mexican casual dining has been under continued pressure with the fast growth of "Fast Casual" Mexican brands, such as Moe's Southwest Grill, Panchero's Mexican Grill, Baja Fresh, Qdoba Mexican Grill, Tijuana Flats, and Chipotle Mexican Grill, and the competitive intrusion of Mexican product offerings to the varied-menu bar and grill segment

such as Chili's, Applebee's and TGI Fridays, thereby making the "Mexican" meal available in new and substantially more locations.

13. The Debtors also struggle with rental rates that are currently, or will be in the near future, at amounts that the revenues from the specific leased location cannot sustain, especially in combination with increased costs of goods, services and employees.

14. In response to these developments, the Debtors have reduced spending and implemented a series of cost-cutting measures to include, among other things, closing of certain locations, streamlining costs for good and services, and renegotiating leases with landlords.

15. Despite the best efforts of the Debtors and their management, market conditions have caused the Debtors' revenues to decrease and resulted in the need for filing for bankruptcy.

16. Additional details regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases are set forth in the Declaration of Peter Donbavand in Support of Chapter 11 Petitions and First Day Motions and incorporated herein by reference as though set forth in full.

*Prepetition Debt and Security Agreements*

17. The Debtors are not obligors under any loan agreements or guaranties, but have pledged their assets to secure the obligations of their ultimate (non-debtor) parent, Alamorita Restaurant Company, LLC ("Alamorita Parent"). Pursuant to that certain Business Loan Agreement dated January 27, 2014 (the "Loan Agreement") and Promissory Note of same date ("Note"), Alamorita Parent, as Borrower, is obligated to Lone Star State Bank of West Texas, Odessa, (the "Prepetition Lender"), in the original principal amount of $6,000,000 (the "Alamorita Loan"). The outstanding balance on the Alamorita Loan, as of the Petition Date, is

estimated to be $2,986,554.19 . Upon belief, the Alamorita Loan was current on the Petition Date.

18. The Debtors have not guaranteed the Alamorita Loan. However, contemporaneously with the making of the Note and Loan Agreement, each of the Debtors entered into security agreements with the Prepetition Lender, pledging the assets of the Debtors to secure the obligations of Alamorita Parent under the Note and Loan Agreement (the "<u>Debtor Asset Pledges</u>"). Thus, the Debtors, in essence, are non-recourse guarantors of the obligations under the Note and Loan Agreement, to the extent the Debtor Asset Pledges created liens in the Debtors' assets that are properly perfected and non-avoidable.

19. The Debtors have not executed blocked account agreements with the Prepetition Lender, nor do the Debtors keep any cash accounts with the Prepetition Lender. Accordingly, the only cash collateral (as defined in Bankruptcy Code § 363) of the Prepetition Lender is that which is created post petition, reflecting the proceeds, product, offspring, rents or profits of the Prepetition Lender's properly perfected, prepetition collateral.

## II. <u>JURISDICTION AND VENUE</u>

20. The Debtors commenced the Bankruptcy Cases by filing petitions for relief on October 4, 2016. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(D)and (M). Venue is proper in the San Antonio Division of the Western District of Texas as the Debtors are headquartered at 120 Chula Vista Drive, San Antonio, Texas 78232.

## III. <u>RELIEF REQUESTED</u>

21. By filing this Motion, the Debtors respectfully request interim authorization to use the Prepetition Lender's cash collateral on the terms summarized below:

{39679833;2}

(a) <u>Budgeted Use of Funds</u> – The Debtors will use any cash of the estates, to include the Lender's cash collateral, if any, pursuant to the budget attached as **Exhibit B** (the "<u>Budget</u>"). The attached Budget identifies the Debtors' proposed expenses to be incurred and paid during the first two (2) weeks of these Bankruptcy Cases, including payroll, rent, inventory purchases, and other general operating expenses. The Budget also incorporates any draws on debtor-in-possession loans ("<u>DIP Loans</u>") approved by the Bankruptcy Court. The Debtors agree that they must comply with all line-items in the Budget, within a variance of 10% on an aggregate basis.

(b) <u>Replacement Liens to the Prepetition Lender</u> – The Debtors propose, as additional adequate protection, to provide replacement liens on all of the Debtors' assets that constituted prepetition collateral of the Prepetition Lender, to the Prepetition Lender but solely to the extent of any diminution in value, as it existed on the Petition Date, of the Prepetition Lender's collateral, and in the order and priority as the Prepetition Lender's liens existed on the Petition Date (the "<u>Replacement Liens</u>"). To the extend the Prepetition Lender holds liens against the estate that are avoidable under Chapter 5 of the Bankruptcy Code, any replacement liens granted to the Prepetition Lender for diminution in value of such avoidable liens shall also be avoidable to the same extent as the prepetition liens.

(c) <u>Payment of Monthly Installments by Non-Debtor Obligor Alamorita Restaurant Company, LLC</u> – Alamorita Restaurant Company, LLC has agreed to continue to make regular principal and interest payments to the Prepetition Lender as additional adequate protection to the Prepetition Lender. Such payments will be made outside of this Chapter 11 and will serve solely to reduce the obligations of these estates under their guaranties of the Prepetition Obligations.

22. By separate motion filed contemporaneously with this Emergency Motion, the Debtors are seeking authority to continue using their existing cash management system.

## IV. ARGUMENTS AND AUTHORITY

*Cash Collateral and Adequate Protection*

23. Section 363(c) of the Bankruptcy Code provides that a debtor-in-possession may use cash collateral if all interested entities consent or the court, after notice and a hearing, authorizes such use. Section 363(e) of the Bankruptcy Code requires that the use of cash collateral be prohibited or conditioned as is necessary to provide adequate protection to persons that have an interest in cash collateral. *In re DeSardi*, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("Adequate protection is . . . grounded in the belief that secured creditors should not be

{39679833;2}

deprived of the benefit of their bargain"). Read together, sections 363(c) and (e) of the Bankruptcy Code authorize a debtor-in-possession to use the cash collateral of a secured creditor if such creditor's collateral is adequately protected. *See In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985) (finding that the court may authorize the use of cash collateral upon a showing that those with an interest in the cash collateral are adequately protected).

24. Although the term "adequate protection" is not precisely defined in the Bankruptcy Code, section 361 sets forth three non-exclusive examples of what may constitute adequate protection: (1) periodic cash payments equivalent to the decrease in value of the creditor's interest in the property; (2) an additional or replacement lien on other unencumbered property of the debtor; or (3) other relief that provides the indubitable equivalent of the creditor's property interest. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1388 (5th Cir. 1986). "[T]he debtor-in-possession has the burden of proof on the issue of adequate protection." *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003).

25. Bankruptcy Rule 4001(b) permits a court to approve use of cash collateral during the 15-day period following the filing of a motion only to the "extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Here, the Debtors require immediate access to the cash collateral to, among other things, fund any interim obligations while DIP financing is forthcoming.

26. Accordingly, the Debtors request that the Court authorize the Debtors to immediately use the cash collateral in the amounts set forth in the Budget, pending a final hearing, and grant the Prepetition Lender adequate protection as provided herein and pursuant

{39679833;2}

to the terms of the proposed interim order attached hereto as **Exhibit A**. At the final hearing, the Debtors request that the relief requested herein be granted on a permanent basis.

## V. NOTICE

27. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel for the DIP Lender, if any; (c) the Prepetition Lender; (d) the Debtors' thirty (30) largest unsecured creditors, on a consolidated basis; (e) those persons who have formally appeared and requested notice in this case pursuant to Bankruptcy Rule 2002; and (f) the Internal Revenue Service and other governmental entities required to receive notice under the Bankruptcy Rules or the Local Rules. The Debtors submit that no other or further notice need be provided.

## VI. CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an Order in substantially the same form as the order attached hereto as **Exhibit A**: (i) authorizing the Debtors to use cash collateral on an interim bassis; (ii) granting the Prepetition Lender adequate protection as provided herein on an interim basis; (iii) setting this Emergency Motion for final hearing; and (iv) granting such other and further relief as is just and proper.

Dated: October 4, 2016                    Respectfully submitted,

                                          AKERMAN LLP


                                           /s/ John E. Mitchell
                                          David W. Parham, SBN: 15459500
                                          John E. Mitchell, SBN: 00797095
                                          2001 Ross Avenue, Suite 2550
                                          Dallas, TX 75201
                                          Telephone: (214) 720-4300
                                          Facsimile: (214) 981-9339
                                          david.parham@akerman.com
                                          john.mitchell@akerman.com

                                          PROPOSED COUNSEL FOR DEBTORS
                                          AND DEBTORS-IN-POSSESSION

{39679833;2}